# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

STEVEN JONES,

      Plaintiff,

v.

NANCY A. BERRYHILL,[1] Acting
Commissioner of Social Security,

      Defendant.

No. 16 C 5819

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Jones filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Social Security Income under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the case affirmed.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Social Security Income (SSI), a claimant must establish that he or she is disabled within the meaning of the Act.[2] *York v. Massanari*, 155 F. Supp. 2d 973,

---

[1] Nancy A. Berryhill, who became Acting Commissioner of Social Security on January 23, 2017, is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

[2] The regulations governing the determination of disability for Disability Income Benefits (DIB) are found at 20 C.F.R. § 404.1501 et seq. The standard for determining DIB is virtually identical to that used for SSI. *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir.

977 (N.D. Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform her or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

# II. PROCEDURAL HISTORY

Plaintiff applied for SSI on August 7, 2012, alleging that he became disabled on March 12, 2010, due to mental conditions. (R. at 261–266, 276). The application was denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 142–165, 176–78). On August 26, 2014, Plaintiff, represented by counsel, presented at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 35–86). The ALJ also heard testimony from Larry M. Kravitz, Psy.D., a medical expert (ME), and Linda Gels, a vocational expert (VE). (*Id.*).

The ALJ denied Plaintiff's request for benefits on December 22, 2014. (R. at 16–34). Applying the five-step sequential evaluation process, the ALJ found, at step one that Plaintiff has not engaged in substantial gainful activity since August 7, 2012, his application date. (*Id.* at 21). At step two, the ALJ found that Plaintiff has the severe impairments of depression, personality disorder, obesity, hypertension, and osteoarthritis. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 21–24).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff has the RFC to perform light work, except:

> [H]e can occasionally lift and carry twenty pounds; can frequently lift and carry ten pounds; can be on his feet standing and walking for at least six hours in an eight hour workday, with normal rest periods; can

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

sit for at least six hours in an eight hour work day, with normal rest
periods; occasionally climb ladders, ropes, scaffolds, ramps or stairs;
occasionally kneel, crouch or crawl; can constantly understand
remember and carryout very short and simple instructions; can
constantly maintain attention and concentration for extended periods
for the work stated above; can constantly make simple work-related
decisions and use judgment; can constantly complete a normal
workday and workweek without interruptions from psychologically
based symptoms and to perform at a consistent pace without an
unreasonable number and length of rest periods; can occasionally
interact appropriately with the general public with superficial contact;
can constantly accept instructions and respond appropriately to
criticism from supervisors; can occasionally get along with coworkers
and peers without distracting them or exhibiting behavioral extremes,
but no joint tasks; and no jobs that require meeting strict production.

(R. at 24; *see id.* at 24–28). Based on Plaintiff's RFC and the VE's testimony, the

ALJ determined at step four that Plaintiff cannot perform any past relevant work.

(*Id.* at 28). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's

testimony, the ALJ determined that there are jobs that exist in significant numbers

in the national economy that Plaintiff can perform, including cleaner/housekeeper,

machine tender, and hand packager. (*Id.* at 29). Accordingly, the ALJ concluded

that Plaintiff is not under a disability, as defined by the Act. (*Id.* at 30).

The Appeals Council denied Plaintiff's request for review on March 22, 2016. (R.

at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as

the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th

Cir. 2009).

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of

the Act. In reviewing this decision, the Court may not engage in its own analysis of

whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a

'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

Plaintiff was born on September 4, 1962, and was 51 years old as of the date of his August 2014 administrative hearing. (R. at 42). He dropped out of school in the eleventh grade and has not obtained his GED or any other vocational training. (*Id.* at 42–43).

Plaintiff's records reflect that he reported throughout 2010 for treatment and management of his established hypertension[4] and bilateral knee pain. (R. at 387–96). At one of his earliest recorded appointments, Plaintiff's height was 6'2" and his weight was 263, resulting in a body mass index (BMI)[5] of 33.8.[6] (*Id.* at 387). At the same appointment, his blood pressure was recorded as 159/93. (*Id.*). In February 2010, it was noted that he had been depressed since his mother's death ten years earlier, leading his examining doctor to diagnose him with major depression. (*Id.* at

---

[4] Hypertension is "high arterial blood pressure; various criteria for its threshold have been suggested, ranging from 140 mm Hg systolic and 90 mm Hg diastolic to as high as 200 mm Hg systolic and 110 mm Hg diastolic." *Dorland's Medical Dictionary*, available at https://www.dorlands/com.

[5] "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2)." SSR 02-1p, 2002 WL 34686281, at *2. "For adults, both men and women, the Clinical Guidelines describe . . . a BMI of 30.0 or above as obesity." *Id.* (internal quotations omitted).

[6] Plaintiff's records indicate that his BMI was 32, however when the calculation is applied to Plaintiff's statistics, the resulting BMI is 33.8.

390–91). Although his weight remained relatively stable during the following seven months, by August 2010, his blood pressure had been reduced to 140/78. (*Id.* at 387, 395).

Almost one year later, in August 2011, Plaintiff sought additional treatment for his bilateral knee pain, which he stated had worsened over the preceding months. (R. at 343). Although Plaintiff demonstrated a normal range of motion and normal musculoskeletal strength, Reena Paul, M.D., assessed osteoarthritis/degenerative joint disease. (*Id.* at 344). At the same visit, Plaintiff admitted that he skipped his medication and did not monitor his own blood pressure, in part because he had run out of medication three days prior. (*Id.* at 343). Dr. Paul determined that Plaintiff's hypertension was "poorly controlled," then counselled him on the importance of complying with his medication. (*Id.* at 343–45).

Plaintiff's next period of treatment was from June 2012 to September 2012, where he generally reported for management of his hypertension and refills of his hypertension medication, which was noted to be well-controlled. (R. at 337–341, 372). In September 2012, Plaintiff returned for a follow-up appointment and reported that he had not taken his medications because he had run out the day prior. (*Id.* at 372). Plaintiff's weight was recorded as 127.1 kilograms (or 280.2 pounds), resulting in a BMI of 36, and his blood pressure was 149/94. (*Id.* at 373). In May 2013, Plaintiff's diagnoses included hypertension, major depression, and

osteoarthritis, which his doctor treated with medications.[7] (*Id*. at 376). By November, his hypertension symptoms had worsened due to emotional stress, exertion, and missed medication; however, his doctor opined that it was still well-controlled. (*Id*. at 381–83).

In August 2014, Plaintiff returned for management of his hypertension and osteoarthritis, and stated that he felt well. (R. at 398). Upon examination, Bhrandon Harris, M.D., noted that he had a cautious gait with limited range of motion in both of his knees. (*Id*. at 399). After his examination, the doctor prescribed Naproxen, an anti-inflammatory drug used to treat pain. (*Id*.); *see also* https://www.drugs.com/naproxen.html. With regard to Plaintiff's hypertension, Dr. Harris stated that it was uncontrolled, but noted that Plaintiff had not been compliant with his medication. (*Id*. at 399–400). In contrast, Plaintiff's depression was controlled at the time of Dr. Harris's examination. (*Id*.). However, Plaintiff was diagnosed with bipolar disorder on a hospital discharge form a few weeks later and prescribed medication. (*Id*. at 400–03).

## A. Disability Determination Services

On October 12, 2012, Rochelle Hawkins M.D., a nontreating physician, completed an Internal Medicine Consultative Examination Report. (R. at 359–62). At the examination, Plaintiff explained that he had a history of hypertension, knee pain, and depression. (*Id*. at 359). Dr. Hawkins noted that Plaintiff measured 73

---

[7] Plaintiff's medications included Amlodipine, used to treat high blood pressure; Citalopram, used to treat depression; Ibuprofen, an anti-inflammatory drug used to treat pain, and Trazodone, an antidepressant medication. (R. at 376). *See* https://www.drugs.com.

and 3/4th inches tall (around 6'2") and weighed 274 pounds, and described him as obese. (*Id.* at 360).[8] Upon examination, Plaintiff had full range of motion in his knees, but he complained of pain on movement; therefore Dr. Hawkins ultimately opined that he would have some difficulty in prolonged standing, walking, lifting, and carrying due to his obesity and chronic knee pain. (*Id.* at 361–62).

Two weeks later on October 24, 2012, Lenore Gonzalez, M.D., a nonexamining DDS consultant, reviewed Plaintiff's record and completed a Physical RFC Assessment. (R. at 142–49). Upon consideration of Plaintiff's activities of daily living, the location, duration, and frequency of his pain and symptoms, medications, and treatment, Dr. Gonzalez opined that Plaintiff retained that ability to perform work at a light exertional level, except that he could only occasionally kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. (*Id.* at 148–49). Dr. Gonzalez acknowledged Dr. Hawkins's finding that Plaintiff's obesity and chronic knee pain would result in several work-related exertional limitations; and although her opinion was consistent with the other medical evidence, he assigned it only "some weight" because she was a non-treating source. (*Id.* at 143, 147). Dr. Gonzalez's findings were later affirmed by Phillip Galle, M.D., another nonexamining state agency consultant, on March 28, 2013. (*Id.* at 153–61).

---

[8] At the same appointment, Plaintiff's blood pressure was recorded as 136/90. (R. at 360).

**B. Plaintiff's Testimony**

At his administrative hearing, Plaintiff testified that he experiences severe bilateral knee pain which is not alleviated by medication. (R. at 45, 58–59). As a result of his knee pain, Plaintiff testified that he can walk only one block and lift 15 pounds. (*Id.* at 45; 52). Because Plaintiff's left knee pain is greater than his right knee pain, his doctor prescribed him a left knee brace, which he uses two to three times to week when his knee "really get[s] to hurting." (*Id.* at 59–60). Plaintiff rated his left knee pain a nine of ten on the pain scale. (*Id.* at 59).

Plaintiff further testified that he felt depressed over his reduced physical abilities. (R. at 54). In regard to his medications, Plaintiff takes pills for both his blood pressure and his depression. (*Id.* at 53–54). Plaintiff stated that during the day his usually watches TV, but does not grocery shop or perform chores around the house. (*Id.* at 55–56).

## V. DISCUSSION

Plaintiff raises three arguments in support of his request for reversal of the ALJ's determination that he is not disabled: (1) the ALJ's RFC determination was unsupported by substantial evidence; (2) the ALJ's subjective symptom evaluation was erroneous; and (3) the ALJ failed to consider the aggregate effect his obesity has on his other impairments in violation of SSR 02-1p.

**A. The ALJ's RFC determination was supported by substantial evidence.**

Plaintiff first contends that the ALJ committed reversible error when he based his RFC assessment upon the 2012 and 2013 findings of DDS consultants, Drs.

Gonzalez and Galle, who did not have access to Dr. Harris's 2014 medical evidence at the time of their reports. (Dkt 13 at 7–11). This argument lacks merit. Because Dr. Harris's statements do not constitute an opinion, there was no evidence that conflicted with the findings of the DDS consultants which the ALJ failed to consider when formulating his RFC.

In his report, Dr. Harris detailed that Plaintiff had a "cautious gait" and limited range of motion in his knees. This statement does not constitute a medical opinion. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions . . . reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restriction."). In particular, Dr. Harris's notation does not specify any work-related restrictions Plaintiff may have as a result of his knee problems, or indicate what activities Plaintiff could still perform despite his limitations. *See* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations"). Further, as the ALJ noted, Plaintiff felt well and was in no acute distress. (R. at 26). Dr. Harris adjusted Plaintiff's medications to control his knee pain. (*Id.*). Because the doctor did not offer an opinion about Plaintiff's ability to tolerate exertional activities, his report was not inconsistent with the findings of the DDS consultants that Plaintiff was capable of walking and standing for six hour in an eight-hour work day. Therefore, Dr. Harris's statements presented no conflict that the ALJ was required to address before he adopted the findings of Drs. Gonzalez and Galle.

Plaintiff also contends that the ALJ should have secured an updated expert opinion in light of Dr. Harris's examination. (Dkt. 13 at 8–10). The authority governing the purchase of new examinations is discretionary and provides that the SSA "may purchase a consultative exam to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the SSA] to make a determination or decision on [a claimant's] claim." *See* 20 C.F.R. § 404.1519a(b). Neither is at issue here. First, neither party argues that the evidence of record was insufficient to make a determination. Second, because the notations made by Dr. Harris did not conflict with the findings of the DDS consultants, there was no inconsistency in the evidence for the ALJ to resolve. Accordingly, the ALJ did not abuse his discretion in deciding not to order an additional examination.

Moreover, an ALJ is entitled to assume that a claimant, who is represented by counsel, has presented his strongest case for benefits. *See Skinner*, 478 F.3d at 84. Following Dr. Galle's March 2013 report, Plaintiff's record contains no additional examinations or opinions that indicate that he had greater functional limitations than those opined by the DDS consultants. As a result, Plaintiff has failed to meet his burden to show the ALJ's RFC determination was unsupported by the evidence of record.

Finally, Plaintiff alleges the ALJ had a duty to discuss the possibility of Plaintiff's deteriorating impairments. (Dkt. 13 at 10). The court is not persuaded. In making his argument, Plaintiff relies on two cases where the Seventh Circuit remanded because the ALJs failed to consider the possibility of the claimants'

deteriorating condition before according weight to the medical source opinions. *See Clifford*, 227 F.3d at 870–71 (finding remand was appropriate because the ALJ did not consider the possibility of Plaintiff's deteriorating condition before he evaluated the opinion of an examining physician which was inconsistent with an earlier examiner's opinion); *see also Roddy v. Astrue*, 705 F.3d 631, 634–37 (7th Cir. 2013) (remanding where the ALJ did not discuss the treating physician's deposition statement that the claimant's degenerative disc disease had deteriorated since beginning treatment before rejecting this physician's opinion.). Here, Plaintiff fails to point to any evidence which "sugget[s] that his level of functioning may have deteriorated over time." (Dkt. 13, at 10). Accordingly, the Court concludes that the ALJ's RFC determination was proper.

## B. The ALJ's Subjective Symptom Evaluation Was Not "Patently Wrong."

The Social Security Administration determined recently that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." Social Security Ruling (SSR) 16-3p, at *2.[9] "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain

---

[9] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (internal citations omitted); see 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; see also 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)*); see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's subjective symptoms are

not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence, medical or lay, which does support the claimant's subjective symptoms. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons" for the subjective symptom evaluation; "the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

Plaintiff testified that his daily activities are limited to watching television and napping. (R. at 55, 57). His pain and depression limit his ability to get along with people and take instructions. (*Id.* at 65–66). When he is in pain, he often gets into arguments with people. (*Id.* at 65).

In his decision, the ALJ found that Plaintiff's allegations "are not entirely credible." (R. at 25). Specifically, the ALJ found Plaintiff's statements not credible

because (1) the record reflects significant gaps in Plaintiff's treatment; (2) Plaintiff's treatment has been "routine and conservative in nature;" (3) and Plaintiff has not been entirely compliant with his prescribed medications. (*Id.*).

Not all of these reasons are legitimate. The ALJ drew improper inferences about Plaintiff's subjective symptoms based on gaps in his medical treatment without first determining whether Plaintiff had good reasoning for his lack of medical care. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care."). Nevertheless, the ALJ otherwise supported his credibility determination with specific findings and substantial evidence. *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) ("But the standard of review employed for credibility determinations is extremely deferential, and the ALJ did provide some evidence supporting her determination."). The Seventh Circuit has stated that "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are," *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (emphasis in original). The ALJ's subjective symptom evaluation need not be "flawless"; it just need not be "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009)).

Here, the ALJ primarily discounted Plaintiff's subjective symptom allegations due to their inconsistency with the routine and conservative treatment Plaintiff received. At his administrative hearing, Plaintiff testified that the arthritis in his knees prevented him from walking more than one block or lifting more than 15

pounds. He also testified that his depression was compounded by his reduced physical abilities. In general, Plaintiff asserted that his arthritis, depression, and hypertension were disabling. Upon review of the medical evidence, the ALJ found that Plaintiff consistently demonstrated a normal range of motion and strength in his knees, had no physical or mental abnormalities, and his conditions were well-controlled with medication. (R. at 25–27) (citing *id.* at 343–44). Plaintiff had never been referred to a specialist for his pain, nor had he required any emergency care or inpatient treatment for any of his impairments. (*Id.* at 25). The ALJ also noted that Plaintiff's record contained no mental health records, other than the discharge instruction diagnosing him with bipolar disorder. (*Id.* at 25–27). Based on these findings the ALJ determined that Plaintiff's subjective symptom statements were "not entirely credible." (*Id.* at 25); *see Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) ("routine and conservative" treatment, including seeking medical treatment "only seven times in the eight years [claimant] claims to have been totally disabled" and never seeking treatment for her headaches despite her complaints about their severity" provided support for ALJ's adverse credibility finding); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) ("routine and conservative treatment" supported ALJ's adverse credibility finding).

Moreover, in accordance with the regulations, the ALJ did not base his adverse subjective symptom evaluation solely on a lack of objective medical evidence. SSR 16-3p at * 5, ("[O]bjective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an

individual's symptoms."). The ALJ explored possible reasons Plaintiff did not comply with his medical treatment before permissibly drawing a negative inference about his non-compliance. SSR 16-3p at *8. The ALJ pointed to two occasions where Plaintiff's hypertension was reported as uncontrolled because he had failed to take his prescribed medication. (R. at 25–26). He also noted that Plaintiff failed to monitor his own blood pressure and pointed to several instances where he had run out of his medications. (*Id.* at 25). In total, the ALJ properly found that this evidence "suggest[ed] that the symptoms may not have been as limiting as [Plaintiff] alleged." (*Id.*).

Plaintiff complains that the ALJ "failed to articulate any specific reason" for discounting his subjective symptom allegations. (Dkt. 13 at 11). While ALJs must consider several factors when assessing a claimant's credibility, including the claimant's daily activities, reports of pain and symptoms, aggravating factors, medication, treatment, and other limitations, SSR 16-3p, at *7, their duty is minimal and does not require them to "specify which statements were not credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012); *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992) (An ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability").

Under these circumstances, the Court cannot conclude that the ALJ's subjective symptom evaluation was patently wrong. The ALJ supported his decision with specific findings, supported by substantial evidence. *Moss*, 555 F.3d at 561.

## C. The ALJ Properly Accounted for the Aggravating Effects of Plaintiff's Obesity on his Co-Existing Impairments.

Finally, Plaintiff argues that the ALJ failed to sufficiently address the impact of his obesity on his functional capacity. (Dkt. 13 at 13–16). The Seventh Circuit has stated that an ALJ should consider the effect of an applicant's obesity on his "underlying impairments, even if the individual does not claim obesity as an impairment." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (citation omitted). The ALJ explicitly acknowledged this requirement and took Plaintiff's obesity into account "even though no treating or examining medical source has specifically attributed additional or cumulative limitations to [Plaintiff's] obesity." (R. at 22). Indeed, the ALJ found that Plaintiff's obesity was a severe impairment and considered the entire, longitudinal record, which included Plaintiff's obesity, when determining his RFC. (*Id.* at 21, 24–28); *see Sienkiewicz v. Barnhart*, 409 F.3d 798, 802–03 (7th Cir. 2005) (ALJ found claimant was obese and nothing suggests that he then disregarded that finding when evaluating her RFC). Plaintiff appears to confuse conditions with disabilities. "A person can be depressed, anxious, and obese yet still perform full-time work." *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). As the Seventh Circuit explained:

> Conditions must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment. A person can be depressed, anxious, and obese yet still perform full-time work. This point is obscured by the tendency in some cases to describe obesity as an impairment, limitation, or disability. It is none of these things from the standpoint of the disability program. It can be the *cause* of a disability, but once its causal efficacy is determined, it drops out of the picture. If the claimant for social security disability benefits

> is so obese as to be unable to bend, the issue is the effect of that
> inability on the claimant's capacity for work.

*Id.* (citation omitted) (emphasis in original). Plaintiff fails to demonstrate how his

obesity combined with his other impairments impacts his ability to work. *Hisle v.*

*Astrue*, 258 F. App'x 33, 37 (7th Cir. 2007) (claimant bears the burden to "articulate

how her obesity limits her functioning and exacerbates her impairments");

*Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (claimant must "specify

how his obesity further impaired his ability to work") (citation omitted); *see also*

*Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("Skarbek does not explain

how his obesity would have affected the ALJ's five-step analysis.").

Further, in assessing Plaintiff's RFC, the ALJ gave great weight to the findings

of DDS consultants Drs. Gonzalez and Galle, each of whom respectively pointed to

the Internal Medicine Consultative Examination Report performed by Dr. Hawkins

and recited her finding that Plaintiff would experience difficulty with prolonged

standing, walking, lifting, and carrying due to his obesity and chronic knee pain. (R.

at 143, 155); *Prochaska*, 454 F.3d at 736–37 (ALJ's "failure to explicitly consider the

effects of obesity [is] harmless error" where the ALJ adopts "the limitations

suggested by the specialists and reviewing doctors who were aware of the

condition"); *Skarbek*, 390 F.3d at 504 (holding that an ALJ's failure to explicitly

discuss a plaintiff's obesity resulted in harmless error when the ALJ "adopted the

limitations suggested by the specialists and reviewing doctors, who were aware of

[the claimant's] obesity."). Later in their reports, both doctors explained that Dr.

Hawkins's opinion was consistent with the rest of the medical evidence; however,

they accorded her findings only some weight, as she was a nontreating source. (*Id.* at 147, 159). Because the ALJ adopted the findings of Drs. Gonzalez and Galle, he indirectly factored their review and weighting of Dr. Hawkins's opinion into his ultimate RFC assessment. *Skarbek*, 390 F.3d at 504 (where the claimant "does not specify how his obesity further impaired his ability to work [and] . . . the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [the claimant's] obesity, . . . [the obesity] was factored indirectly into the ALJ's decision as part of the doctors' opinions").

## VI. CONCLUSION

For the reason's stated above, Plaintiff's Motion for Summary Judgment [13] is **DENIED** and Defendant's Motion for Summary Judgment [17] is **GRANTED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is affirmed.

Dated: September 12, 2017          E N T E R:

_____
MARY M. ROWLAND
United States Magistrate Judge